**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

DEBRA TROIANO,
            Plaintiff


        v.
                                    C.A. No. 14-496-ML

AETNA LIFE INSURANCE COMPANY,
GENERAL DYNAMICS
CORPORATION LONG TERM
DISABILITY PLAN, and
GENERAL DYNAMICS CORPORATION,
            Defendants

**MEMORANDUM AND ORDER**

Since 2003, the plaintiff in this case, Debra Troiano ("Troiano"), has been the recipient of tax-free long-term disability ("LTD") benefits under an employee welfare benefit plan (the "Plan") established by General Dynamics Corporation ("GDC"), her former employer, and funded and administered by Aetna Life Insurance Company ("Aetna," together with GDC, the "Defendants"). Troiano seeks a declaration from this Court that the LTD benefits she receives, which are subject to set-off by Social Security Disability Insurance ("SSDI") benefits, should be reduced by the after-tax amount of SSDI benefits she receives and not, as they are now, reduced by the gross amount of SSDI benefits she was awarded. The matter is before the Court on the parties' cross-motions for summary judgment.

1

## I. **Factual Background**[1]

The facts underlying Troiano's claims are, for the most part, undisputed. The parties' disagreement focuses primarily on Aetna's interpretation of the provision in the Policy which defines the "Other Income Benefits" by which Troiano's LTD benefit payments are to be reduced.

From 1988 to 2003, Troiano, a Rhode Island resident, was an employee of Electric Boat Corporation, a subsidiary of GDC. Plaintiff's Statement of Undisputed Facts ("PSUF") ¶ 1; Defendants' Statement of Undisputed Facts ("DSUF") ¶¶ 1, 4. Throughout her employment, Troiano participated in GDC's LTD Plan, which was fully funded through an insurance policy issued by Aetna, an insurance company registered to do business in Rhode Island, with its principal place of business in Hartford, Connecticut. PSUF ¶ 2; DSUF ¶ 2, 3. The Plan is an "employee welfare benefits plan,"

---

[1] The summary of facts is based primarily on the parties' respective Statements of Undisputed Facts, to the extent those facts are undisputed. In addition, the Court is in receipt of various other exhibits submitted by the parties, including (1) the Group Policy ("Policy") funding the LTD Plan, Ex. A (Dkt. No. 15-4 at Bates Numbers TROIANO 0002-00027) to the Defendants' Memorandum (Dkt. No. 15) in support of its motion; (2) the Summary of Coverage detailing LTD benefits, id. at TROIANO 00028-00035; (3) the Booklet describing Policy coverage, id. at TROIANO 00035-00050; (4) the Summary Plan Description, which is not formally part of the Plan, but is given to participants to provide a description of the Plan in non-technical language, id. at TROIANO 00051-00072, and (5) a 245-page exhibit (Dkt. No. 37-1), which includes items (1)-(4) as well as correspondence and other documents from Troiano's claim file (non-consecutive Bates Numbers TROIANO 00001-32000).

governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* DSUF ¶¶ 2, 7. As required under ERISA, GDC, as the administrator for the Plan, issued a Summary Plan Description ("SPD") effective January 1, 2003, which describes the terms, conditions, and operations of LTD coverage under the Plan. DSUF ¶ 8, 9, 18. Aetna acted for the Plan as claims administrator regarding LTD benefits. DSUF ¶¶ 8, 1.

The Plan includes the following provisions that are relevant to this case:

> Under Section 503 of Title 1 of the Employee Retirement Income Security Act of 1974, as amended (ERISA), Aetna is a fiduciary. It has <u>complete authority</u> to review all denied claims for benefits under this policy. In exercising such fiduciary responsibility, Aetna shall have discretionary authority to:
>
> determine whether and to what extent employees and beneficiaries are entitled to benefits; and
>
> <u>construe any disputed or doubtful terms of this policy</u>.
>
> Aetna shall be deemed to have properly exercised such authority. It must not abuse its discretion by acting arbitrarily and capricious. Aetna has the right to adopt reasonable:
>
> policies;
> procedures;
> rules; and
> <u>interpretations</u>;
>
> of this policy to promote orderly and efficient administration. TROIANO 00027 (emphases added).

With respect to Long Term Disability Benefits, the Summary of Coverage provides that the Scheduled Monthly Benefit consists of 60% of the beneficiary's monthly predisability earnings. The

Summary notes that "([a]ny benefit actually payable may be reduced by 'other income benefits'. The Booklet-Certificate contains definitions of 'other income benefits', 'adjusted predisability earnings', and 'predisability earnings'.)" TROIANO 00030.

The Booklet notes that

"[i]f other income benefits are payable for a given month:
The monthly benefit payable under this Plan for that month will be the lesser of:
the Scheduled Monthly LTD Benefit; and
the Maximum Monthly Benefit;
minus all other income benefits, but not less than the Minimum Monthly Benefit. TROIANO 00039 (emphasis added).

"Other Income Benefits" are defined to include "Benefits under the Federal Social Security Act." TROIANO 00040. As to Other Income Benefits received in a lump sum, the Booklet provides that "[t]hese will be broken down to a period of time equal to the lesser of (a) the remaining benefit duration; and (b) 60 months." TROIANO 00041.

The Summary Plan Description, which, according to Aetna, is not formally a part of the Plan, provides plain language explanations and examples to inform beneficiaries of their rights and obligations under the Plan. TROIANO 00056. The SPD specifies that Basic Monthly Earnings are "the gross monthly pay paid to you by the Company for performing your job in effect immediately before the Disability begins." TROIANO 00054. The SPD also states that "[y]our benefit amount from the LTD Plan is reduced by any payments you are eligible to receive from other sources, such as:

...Benefits under the Social Security Act." TROIANO 00056, see also TROIANO 00055. It further explains that the monthly LTD benefit payments will not be reduced over time by cost-of-living increases in other benefits, and that benefits from other sources paid in a lump sum "will be prorated over a 60-month period or the maximum benefit period under the LTD Plan, if less." TROIANO 00056.

To illustrate the impact of Social Security benefits on reducing LTD benefit payments, the SPD contains the following example:

> Here's an example of how the benefit reduction works. Assume that Tom has Basic Monthly Earnings of $3,000, bought the 60% level of coverage and becomes eligible for LTD benefits. For purposes of this example, also assume that he qualifies for a Social Security benefit of $600 per month.
>
> Here's how Tom's LTD benefit would be paid:
>
> $1,800 Tom's unreduced LTD
>        benefit
>        (60% of $3,000)
> - $600 Social Security Benefit
> $1,200 Tom's monthly LTD Benefit    TROIANO 00057.

The SPD also advises that

> "[t]he Plan Administrator, or its agent or delegate, has the absolute authority and sole discretion to: Interpret the terms of the LTD Plan, including the LTD Plan's eligibility provisions and its provisions relating to qualification for and payment of benefits, as well as this summary plan description, [and] [r]esolve ambiguities in the LTD Plan or this summary plan description... TROIANO 00064.

As a participant in the Plan, Troiano was eligible for a scheduled monthly LTD benefit of 60 percent of her gross monthly pre-disability earnings in the event she became disabled. DSUF ¶ 13. Such monthly benefit payments were subject to reduction for income she was eligible to receive from other sources, including "benefits under the Federal Social Security Act." PSUF ¶ 5, DSUF ¶¶ 14, 15.

In December 2003, Troiano, having been determined to be disabled under the Plan, began receiving benefits. PSUF ¶ 2, DSUF ¶22. TROIANO 31799. Although Aetna terminated Troiano's benefits on three separate occasions, such terminations were subsequently reversed and it is undisputed that Troiano has been deemed 100% disabled under the Plan since 2003. PSUF ¶ 9. Troiano's monthly LTD benefit was set at $3,350, or 60% of her gross monthly basic earnings of $5,583.33. DSUF ¶¶ 23, TROIANO 00054. During the course of her disability, Aetna contacted Troiano and advised her to pursue SSDI benefits and "appeal any denial at least through the administrative law judge level." PSUF ¶13, TROIANO 30929, 30926.

By letter dated June 10, 2009, Aetna advised Troiano that it believed a Social Security application on her behalf was warranted and Aetna offered to Troiano the assistance of a specialized claims administration company to represent her at no cost to Troiano as long as she continued to receive LTD benefits from Aetna. TROIANO 31766.

6

Troiano applied for SSDI in June 2004 and, when her application was denied, Troiano appealed. PSUF ¶¶ 14, 15, DSUF ¶¶ 24, 25. Troiano filed suit in this Court in May 2008, appealing the denial of her SSDI application. The claim was remanded to the Social Security Administration ("SSA").[2] PSUF ¶ 21, DSUF ¶ 26.

On October 29, 2009, an administrative law judge determined that Troiano had been under a disability, as defined by the Social Security Act, since July 12, 2003. Pltf.'s Ex. 2 (Dkt. No. 37-2). In April 2010, Troiano was awarded SSDI benefits, both retroactively (as a lump sum) and prospectively. DSUF ¶ 26. Pursuant to an award letter from the SSA, Troiano was entitled to monthly benefit payments beginning in January 2004 (five calender months after becoming disabled). TROIANO 31956. The letter advises Troiano that she would receive a first check of $80,396 for benefits through January 2010 and it notes that "[t]he amount you actually receive may differ from your full benefit amount" and was subject to reduction by, *inter alia*, Medicare premiums and, if applicable, workers' compensation offset. Id. The letter shows an initial monthly benefit amount of $1,783 for January 2004, increased by a cost-of-living adjustment ("COLA") for each of the

---

[2] Although the Defendants raise an objection to Troiano's statements regarding her appeal of the SSDI denial because it is not supported by a citation to the record, the Court, as the Court presiding over that appeal, takes judicial notice that the appeal was remanded to the Commissioner of the SSA on February 25, 2009. Troiano v. Astrue, C.A. No. 08-197-ML (D.R.I. 2008) (Dkt. No. 11).

following five years. Id. Further, the letter states that Troiano's past-due benefits are $137,825 for January 2004 through November 2009, TROIANO 31957, and it advises Troiano that fees for her attorney are capped at $6,000. TROIANO 31958.

By letter dated April 16, 2010, Aetna informed Troiano that it had learned of her monthly $1,783 SSDI award and of the retroactive lump sum benefit she had been awarded. PSUF ¶ 31, TROIANO 31998. Aetna advised Troiano that, because the Plan requires Aetna to offset her monthly LTD benefit by the amount of the SSDI benefit, the retroactive SSDI payment resulted in an overpayment and it requested "[f]ull reimbursement of this overpayment by April 30, 2010."[3] PSUF ¶ 31, TROIANO 31998. Aetna also informed Troiano that her future monthly LTD benefit payments of $3,350 would be reduced by the SSDI benefits of $1,783 she had been awarded. TROIANO 31998-32000. Aetna credited the amount of $6,000 for attorney's fees against the lump sum offset, reducing the amount of overpayment to $126,526. DSUF ¶¶ 28, 29

It is undisputed that Troiano's LTD benefits, computed on her gross predisability income, were tax-free, whereas she was required

---

[3]

It is undisputed that Aetna made demands for prompt payment in full even though the Plan documents specify that the reimbursement be prorated over a sixty-month period. PSUF ¶ 31. Likewise, it is undisputed that Aetna continued its efforts to collect the full amount immediately, even engaging the services of a debt collections agency. PSUF at 6 n. 2. TROIANO 31328, 20023. Such efforts ceased when Troiano engaged counsel to represent her. Id.

to pay income taxes on her SSDI benefits. PSUF ¶ 30; DSUF ¶ Subsequently, Troiano's counsel requested that Troiano's LTD benefits be offset with her net SSDI benefits. PSUF ¶¶ 34, 35. TROIANO 31781, 31914. Following internal communications at Aetna regarding this issue, Aetna sent a letter dated November 28, 2011 to Troiano, informing her that "[i]t is industry standard to offset the Social Security Disability Income (SSDI) gross amount and not the net amount. To adjust the SSDI offset, according to net amount, would involve taxes and we do not get involved in taxation." PSUF ¶ 39; TROIANO 20017; DSUF ¶ 36.

In an attempt to appeal Aetna's decision to offset Troiano's tax-free LTD benefits (computed on Troiano's gross predisability income) with her gross taxable SSDI benefits, Troiano sent a letter dated May 25, 2012 to Aetna. PSUF ¶ 40; DSUF ¶ 37. TROIANO 30981-30990. Troiano further requested that future offsets from the LTD benefits be calculated on her net SSDI payments, and she asked for reimbursement of witness and court filing fees which she incurred in pursuing her SSDI benefits. TROIANO 30981. Aetna did not respond to Troiano's letter, PSUF ¶ 41, and the record shows that, after some internal communications, which also involved Aetna's in-house counsel, no further action was taken on Troiano's letter. PSUF ¶¶ 44-47. Other internal Aetna communications related to Troiano's request for reimbursement of court fees and witness costs indicate that Aetna was inclined to pay such costs upon presentation of an

invoice or cancelled check. PSUF ¶¶ 48, 49. It is undisputed, however, that Aetna did not inform Troiano accordingly. PSUF ¶¶51, 52. The parties agree that Aetna recouped the full amount of the $126,526 SSDI benefit overpayment. DSUF ¶ 32. Aetna continues to reduce Troiano's monthly LTD benefit by the initial $1,783 SSDI benefit, without reducing that offset for any income tax that may be due or increasing the offset for any COLA. DSUF ¶¶ 33, 34. According to Aetna, offsetting the SSDI benefit amount "net of" or less any income taxes payable on such SSDI benefits would create an unreasonable administrative burden on plan and benefits administrators, a contention with which Troiano disagrees. DSUF ¶ 41, Plaintiff's Statement of Disputed Facts ¶ 41.

## II. Procedural History

On November 13, 2014, Troiano filed a first complaint in this Court, which she amended on May 14, 2015 (the "Complaint") (Dkt. No. 25), two months after Defendants Aetna and the General Dynamics Corporation Long Term Disability Plan (the "Plan") filed a motion for summary judgment (Dkt. No. 15).[4] Troiano's five-count Amended Complaint includes (Count I) Enforcement of Plaintiff's Rights pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B); (Count II) Breach of

---

[4]

Following a May 8, 2015 hearing on the matter, Troiano's motion (Dkt. NO. 18) to amend her first complaint was granted in part, allowing her to include a claim for administrative penalties against General Dynamics. Order (Dkt. No. 24). Her request to add a claim for Equitable Estoppel against Aetna (Count V of the proposed amended complaint, Dkt. No. 18-2) was denied.

Fiduciary Duty; (Count III) Clarification of Plaintiff's Rights to Future Benefits; (Count IV) Declaration of Plaintiff's Rights under the Plan; and (Count V) Administrative Penalties against General Dynamics. Troiano alleges, *inter alia*, that her case should be reviewed *de novo* and that, pursuant to R.I. Gen. Laws § 27-4-28 (addressing discretionary clauses in insurance policies), Aetna has no discretion under the Plan. Troiano seeks a declaration from this Court that her past and future LTD benefits should be offset against the SSDI benefits she was awarded <u>minus</u> any income taxes she was assessed on such benefits, and <u>minus</u> any expenses she incurred in pursuing her SSDI appeal.

On March 20, 2015, Aetna and GDC filed a motion for summary judgment (Dkt. No. 15). Subsequently, Troiano's motion (Dkt. No. 18) to amend her complaint was granted, in part, which added Count V for administrative penalties against GDC to her claims. On June 8, 2015, after Troiano's motion for an order compelling production of privileged documents and for discovery (Dkt. No. 17) was denied (Dkt. No. 24), Troiano filed a response to the Defendants' motion for summary judgment (which relates only to Counts I-IV of the Amended Complaint) (Dkt. No. 34) and a cross-motion for summary judgment (Dkt. No. 36) as to Counts I-IV of the Amended Complaint. Both parties submitted objections to their respective cross-motions. (Defendants, Dkt. No. 42, Troiano Dkt. No. 44).

## III. Standards of Review

### A. Cross-Motions for Summary Judgment

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In deciding a motion for summary judgment, the Court reviews the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor. Cadle Co. v. Hayes, 116 F.3d 957, 959 (1st Cir.1997).

In summary judgment, the burden shifts from the moving party, who must first aver "'an absence of evidence to support the nonmoving party's case,'" Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir.1990) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)), to the nonmoving party, who must present facts that show a genuine "trialworthy issue remains." Cadle, 116 F.3d at 960 (citing Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir.1995); Maldonado-Denis v. Castillo-Rodriquez, 23 F.3d 576, 581 (1st Cir.1994)).

When both parties raise cross-motions for summary judgment, the basic Rule 56 standard is not altered. Rather, it requires the Court "to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Adria Intern. Group., Inc. v. Ferre Development, Inc., 241 F.3d 103, 107 (1st

Cir. 2001)(citing <u>Wightman v. Springfield Terminal Ry. Co.</u>, 100
F.3d 228, 230(1st Cir. 1996)); <u>Bienkowski v. Ne. Univ.</u>, 285 F.3d
138, 140 (1st Cir.2002)("'The court must rule on each party's
motion on an individual and separate basis, determining, for each
side, whether a judgment may be entered in accordance with the Rule
56 standard.' 10A Charles Alan Wright, Arthur R. Miller & Mary Kay
Kane, <u>Federal Practice and Procedure</u> § 2720, at 335–36 (3d
ed.1998).").

### B. Challenge of Determinations under Employee Benefits Plan

Troiano's complaint, although it is styled as a declaratory
action regarding her rights under the Plan, is essentially a claim
to recover benefits she believes are due her. It is undisputed,
however, that Troiano's application for LTD benefits was granted
and that Aetna paid to her 60% of her gross predisability income,
totaling $248,251 for the benefits period from January 1, 2004 and
March 31, 2010. TROIANO 31999. Troiano's disagreement is thus
limited to the way her LTD payments are offset by the gross amount
of her awarded SSDI benefits.

There is no dispute between the parties that ERISA is
applicable to the Plan, which qualifies as an employee benefit
plan, 29 U.S.C. § 1002(1); <u>see</u> <u>Wickman v. Northwestern Mutual Life
Insurance Company</u>, 908 F.2d 1077, 1082 (1st Cir. 1990)(the elements
of an ERISA plan are (1) a plan, fund, or program (2) established
or maintained (3) by an employer or by an employee organization, or

by both, (4) for the purpose of providing ... benefits in the even of disability (5) to participants or their beneficiaries). 29 U.S.C. §1144 provides that ERISA supersedes "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. §1144(a).[5] Accordingly, R.I. Gen. Laws 27-4-28, on which Troiano relies for the proposition that Aetna has no discretion under the Plan is preempted entirely by ERISA. Shaw v. Delta Air Lines, 463 U.S. 85, 90, 99, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)(holding that state statutes that relate to, and interfere with, the administration of an ERISA governed benefit plan are preempted).

The First Circuit has recognized that, "in an ERISA benefit-denial context, 'the district court sits more as an appellate tribunal than as a trial court.'" Cusson v. Liberty Life Assur. Co. of Boston, 592 F.3d 215, 223-224 (quoting Leahy v. Raytheon Co., 315 F.3d 11, 18 (1st Cir.2002)). "In such cases, 'summary judgment is simply a vehicle for deciding the issue,' and, consequently, 'the non-moving party is not entitled to the usual inferences in its favor.'" Id. (quoting Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 517 (1st Cir.2005)).

When an ERISA-based benefit plan gives the administrator

---

[5]

Section 1003(b) relates to several categories of plans, none of which are applicable in this case.

discretionary authority[6] to determine eligibility for benefits or construe the terms of the plan, the Court is required to apply the deferential "arbitrary and capricious" standard of review. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); Zarro v. Hasbro, Inc., 896 F.Supp.2d 134, 140 (D.R.I.2012). Under that "generous standard," the Court inquires into whether Aetna's determinations were "reasoned and supported by substantial evidence." Medina v. Metropolitan Live Ins. Co., 588 F.3d 41, 45 (1st Cir. 2009)(citing Stamp v. Metropolitan Life Ins. Co., 531 F.3d 84, 88 (1st Cir. 2008)). Accordingly, as long as Aetna's determinations and interpretations rest on a reasonable basis, they will be upheld.

## IV.  **The Parties' Positions**

Aetna takes the position that its interpretation of the Plan provision calling for an offset of gross SSDI benefits from the LTD benefits is reasonable and supported by the plain language of the Plan documents. It further suggests that Troiano's interpretation would (1) impose her own tax liability on Aetna, for which there is no support in the Plan language; (2) preclude the orderly and effective administration of the Plan; and (3) place an unreasonable

---

[6]

The discretionary language of the Plan provides, *inter alia,* that (1) Aetna has "complete authority to review all denied claims for benefits under this policy;" (2) it has discretionary authority to: ... construe any disputed or doubtful terms of this policy; and (3) "it has the right to adopt reasonable:...interpretations;..." TROIANO 00027 (emphases added).

burden on Aetna by including tax considerations into the calculation and payment of LTD benefits. Aetna also rejects Troiano's suggestion that the Court should apply *de novo* review to her claims.

On her part, Troiano maintains that the *de novo* standard is applicable because Aetna failed to respond to her "appeal" and, thereby, failed to exercise discretion. Troiano asserts that she was promised that her LTD Plan benefit would not be subject to income tax; that, accordingly, it should be offset by her net SSDI benefits; and that her interpretation of the offset provision is the only reasonable one. Troiano also suggests that, in violation of the Plan, she now receives less than 60% of her predisability earnings "not subject to income tax." Pltf.'s Mem. at 17 (Dkt. No. 37). Finally, Troiano reject's Aetna's assertion that reducing LTD benefits by only the taxed portion of SSDI benefits would unreasonably burden Aetna as the administrator of the Plan.

## V. Discussion

At the outset, the Court notes that, notwithstanding Troiano's posture in this litigation, this case is not about the denial of LTD benefits under 29 U.S.C. § 1132(a)(1)(B). It is undisputed that Aetna approved Troiano's disability claim and that it paid her more than $248,251 in unreduced, non-taxed LTD benefits over a six-year period. Instead, the case relates solely to the Plan administrator's interpretation of the offset provision in the Plan.

Aetna's lack of response to Troiano's request to reduce the SSDI offset by her tax liability does not constitute a failure on the part of Aetna to exercise its discretionary power. Under the plain language of the Plan, Aetna is given broad discretionary powers and authority to interpret the provisions of the Plan. Accordingly, the *de novo* standard is inapplicable in this case and, unless Aetna's interpretation of the offset provision is unreasonable, Aetna is entitled to deference under the arbitrary and capricious standard.

Troiano suggests that the Plan guaranties to her a tax-free monthly benefit of 60% of her gross monthly predisability earnings, or $3,350. Pltf.'s Mem. at 6 ("This monthly benefit—both in its dollar amount and its tax advantage—is what Ms. Troiano was promised under the Plan."). The plain language of the Plan, however, does not make such promises or guarantees. It is correct that Troiano's LTD benefits (which were calculated on her gross, untaxed predisability income) were not subject to income tax. However, it was explicitly stated in the Plan, and Troiano does not dispute, that such LTD benefits were subject to an offset against any SSDI benefits that were "payable to her for a given month," TROIANO 00039, or which she was "eligible to receive." TROIANO 00056; Pltf.'s Mem. at 14. Nothing in any of the Plan documents suggests that Aetna would reduce the offset of such SSDI benefits by any potential tax liability Troiano would incur as a result of being awarded SSDI benefits.

17

The illustrative example provided in the SPD uses the fictional beneficiary's basic monthly earnings (defined in the SPD as "gross monthly pay," TROIANO 00054) of $3,000 to calculate a 60% LTD benefit of $1,800, which is reduced by $600 because the fictional beneficiary "qualifies for a Social Security Benefit of $600 per month." TROIANO 00055. Nothing in the example indicates that this is the amount the beneficiary actually receives, nor does the example indicate that the offset includes a calculation of any income tax liability the recipient may incur.

Contrary to Troiano's assertions, the SSDI offset does not "reduce[] the value of [her] LTD Plan benefit, by nullifying the tax advantages that the Plan provided for." Pltf.'s Mem. at 6. From the outset, the LTD benefits under the Plan were, under the Plan's plain language, subject to offset against "other income," including SSDI benefits. Troiano's monthly benefit paid under the LTD plan, "[i]f other income benefits are payable for a given month" was defined as "the lesser of: the Scheduled Monthly LTD Benefit; and the Maximum Monthly Benefit; minus all other income benefits, but not less than the Minimum Monthly Benefit."   TROIANO 00039. (Emphasis added). With respect to "other income benefits for which you appear to be eligible," the Plan provides that such income benefits will be estimated by Aetna and that the LTD benefits will be adjusted upon receipt of proof of the exact amount awarded or "that benefits have been denied after review at the highest

18

administrative level." TROIANO 00041.

The LTD benefits paid to Troiano after she was awarded such SSDI benefits were not subject to income tax. They were, however, reduced by the SSDI benefits she was eligible to receive, without taking into consideration any income tax that was due on those benefits. Although Troiano's initial LTD benefits were calculated as $3,350 (60% of her gross monthly income), it was clear under the Plan language that the amount would be reduced, should she qualify to receive or become eligible for "other income." Notwithstanding the imposition of income tax on Troiano's SSDI benefits, her LTD benefits, albeit reduced by the SSDI benefits she was eligible to receive, remained untaxed. TROIANO 00053. Aetna's confirmation to Troiano that "the total amount from all applicable sources will not be less than 60% of your Monthly Rate of Basic Earnings (MRBE) of $5,583" is still accurate. According to Troiano, she receives (tax-free) $1,567 in LTD benefits from Aetna. Pltf.'s Mem. at 17, TROIANO 32000. Troiano was also awarded an initial SSDI benefit of $1,783. Together, her full benefit amount is $3,350, or 60% of her pre-tax predisability income. In addition, Troiano benefits from regular COLA increases which, under the terms of the Plan, do not contribute to a further reduction of her LTD benefits. What Troiano seeks in this litigation is an assumption of her SSDI tax liabilities by Aetna. The LTD Plan, however, does not provide for such a shift. Moreover, Aetna's interpretation of the Plan's offset

provision, which is given considerable deference, is bolstered by its contention that including a calculation of each Plan participant's varying (among participants and for each participant, from year to year and depending on changes in personal circumstances) income tax liability would be unreasonably burdensome and preclude the orderly and effective administration of the Plan.

In light of the plain language of the Plan with respect to "other income" offset, the deference due to the interpretation of the Plan by the Plan Administrator, and the clearly burdensome consequences of factoring individual income tax consequences into the process, Troiano's suggestion that "[a]t the very least, [her] interpretation is one reasonable interpretation of the Plan," Pltf.'s Mem. at 23, is insufficient to withstand the Defendants' motion for summary judgment.

Finally, with respect to Troiano's request for reimbursement of $1,300 in court filing fees and witness fees she incurred in pursuing her appeal for SSDI benefits, the record indicates, and Aetna appears to acknowledge, that such reimbursement is available to Troiano upon presentation of an invoice and/or canceled check. Accordingly, Troiano is due reimbursement of $1,300, provided she produces the applicable documentation to support her claims therefor.

20

**Conclusion**

For the reasons stated herein, the Defendants' motion for summary judgment with respect to Counts I through IV of the Amended Complaint is GRANTED to the extent those Counts relate to the SSDI offset amount. The motion is DENIED as to Troiano's requested reimbursement of court and witness fees totaling $1,300. Troiano's cross-motion for summary judgment on Counts I through IV is DENIED, in part, and GRANTED with respect to $1,300 in reimbursement costs related to her SSDI appeal.


SO ORDERED.

/s/ Mary M. Lisi

Mary M. Lisi
United States District Judge

September 30, 2015